2016 UT App 32

# THE UTAH COURT OF APPEALS

MICHAEL S. ROBINSON,
Appellant,
*v.*
DEBRA J. ROBINSON,
Appellee.

Opinion
No. 20130652-CA
Filed February 19, 2016

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 074900501

F. Kevin Bond and Budge W. Call, Attorneys
for Appellant

Dean C. Andreasen and Diana L. Telfer, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and STEPHEN L. ROTH
concurred.

CHRISTIANSEN, Judge:

¶1    Michael S. Robinson (Husband) raises numerous challenges to the district court's findings, rulings, and orders in the ongoing divorce litigation between himself and Debra J. Robinson (Wife). We affirm.

## BACKGROUND

¶2    Husband filed a petition for divorce in February 2007. At that time, the marital estate included extensive real property, including a commercial plaza known as Phoenix Plaza. Husband

and Wife arrived at a stipulated property settlement agreement on November 2, 2007 (the Stipulation). In the Stipulation, the parties agreed that Phoenix Plaza had a fair market value of $7.25 million. As relevant here, the Stipulation provided that Husband would receive Phoenix Plaza and that he was required to refinance the loan on the property. From the proceeds of the refinance, Husband was to pay Wife $1,784,419 for her share of Phoenix Plaza. The Stipulation required that Husband "file the loan refinance application within 15 days of the date of [the Stipulation]" and provided that "[i]f the re-financing does not occur within one hundred twenty (120) days of the date the parties sign [the Stipulation]," Husband would pay 8 percent interest to Wife on the amount owing to her.

¶3　Husband did not apply to refinance the Phoenix Plaza loan within fifteen days of entering into the Stipulation, or at any time thereafter. Wife moved for entry of a divorce decree based on the Stipulation in February 2008. Husband moved to set aside the Stipulation, "arguing that his performance under [the Stipulation] was excused because[,] due to the parties' mistaken assumptions regarding the status of [leases at Phoenix Plaza], it was impossible for him to secure the contemplated loan." *Robinson v. Robinson*, 2010 UT App 96, ¶ 4, 232 P.3d 1081. The district court denied Husband's motion and entered a decree of divorce incorporating the Stipulation on December 31, 2008. Husband appealed. *Id.* ¶ 1.

¶4　This court affirmed the district court's denial of Husband's motion to set aside, reasoning that "the evidence Husband offer[ed] to show that the parties were mistaken as to the value of the plaza speaks only to the value of the plaza *after* events unfolded regarding the expiring leases." *Id.* ¶ 10 (emphasis in original). In other words, "Husband set[] forth no evidence that *at the time the stipulation was signed* the plaza was not worth the value the parties attributed to it." *Id.* (emphasis in original). This court also noted that even if Husband had made a mistake in his valuation due to inadequate information, that

mistake would not be grounds to set aside the Stipulation, because he had chosen to enter the Stipulation while aware of the inadequacy. *Id.* ¶ 11. Finally, this court rejected Husband's impossibility claim because the impossibility he alleged existed at the time the parties entered into the Stipulation and thus was not "an *unforeseen* event occur[ring] *after formation of the contract*." *Id.* ¶ 12 (emphases in original) (citation and internal quotation marks omitted).

¶5   This court's opinion affirming the district court's denial of Husband's motion to set aside the Stipulation was issued on April 22, 2010. On October 8, 2010, Wife moved for an order to show cause for Husband to demonstrate why he should not be held in contempt for failing to comply with the divorce decree incorporating the Stipulation's terms. Husband responded with declarations to the effect that he would not have been able to refinance Phoenix Plaza, even if he had submitted a financing application. At the hearing on Wife's motion, the parties agreed to several measures intended to advance the sale of Phoenix Plaza and another commercial property, Sandy Retail Center. The commissioner struck Husband's declarations, entered an order incorporating the parties' agreements, and certified the contempt allegations for an evidentiary hearing before the district court. Despite these proceedings, it appears that Husband continued to frustrate the sale of Phoenix Plaza by failing to sign listing agreements or respond to purchase offers. Eventually, the district court ordered Husband to sign a purchase contract addendum to accept a pending offer on Phoenix Plaza; because Husband still refused, the court authorized the court clerk to sign for him.

¶6   At the July 26, 2011 evidentiary hearing, the district court found Husband in contempt for failing to comply with the divorce decree. For a variety of reasons, the court's written findings, order, and judgment were not issued until March 1, 2012. These reasons included Husband's pro se filing of a fraud action against Wife, Husband's bankruptcy filing, and

Husband's motion asking the court to reject purchase offers for Phoenix Plaza and Sandy Retail Center. Husband also recorded lis pendens against Phoenix Plaza, Sandy Retail Center, and two other properties. On February 3, 2012, the district court found that the lis pendens against Sandy Retail Center was a wrongful lien and declared it void ab initio. Nevertheless, on February 6, 2012, Husband recorded a second lis pendens against Sandy Retail Center, and on February 7, 2012, Husband recorded a second lis pendens against Phoenix Plaza. Thereafter, the district court held a hearing on all six lis pendens and determined that they were all wrongful liens and enjoined Husband from interfering with the sale of Phoenix Plaza.

¶7      On March 1, 2012, the district court entered its written findings, order, and judgment relating to the July 26, 2011 evidentiary hearing. The district court held Husband in contempt for failing to comply with the divorce decree's requirement that he pay Wife the amounts he had agreed to in the stipulation,[1] entered a $1,912,696 judgment against Husband, and awarded attorney fees to Wife.

¶8      Husband did not pay Wife the judgment amount. Accordingly, Wife filed a writ of execution against a condominium owned by Husband. Husband ceased paying the mortgage for the condominium and, because Wife was a co-obligor on the condominium's mortgage, she began to pay the mortgage to protect her credit. On October 2, 2012, the district court ordered Husband to resume paying the mortgage and to reimburse Wife. At a hearing on January 22, 2013, the court reiterated its earlier order. And in a February 13, 2013 court order, the court renewed its direction to Husband to pay the

---

1. In the Stipulation, Husband had agreed to pay Wife $1,784,419 for her interest in Phoenix Plaza, $105,777 for her interest in a parking lot, and $22,500 in exchange for Husband being awarded an airplane. The sum of these amounts is $1,912,696.

condominium mortgage and the amounts owed to Wife. Finally, on April 9, 2013, the court entered an order to show cause requiring Husband to demonstrate why he should not be held in contempt "for violating the terms of the Order entered February 13, 2013, relative to the hearing conducted January 22, 2013, by failing to reimburse [Wife]" and "by refusing to make the February and March 2013 mortgage payments." After an evidentiary hearing, the district court declined to impose statutory damages for the wrongful liens, declined to find Husband in contempt for filing the lis pendens, and declined "in the interest of justice" to impose further contempt findings or sanctions against Husband. The court also stated that its previous findings of contempt against Husband, including contempt for failing to comply with the Phoenix Plaza provisions of the Stipulation, remained in effect. The court also awarded Wife attorney fees incurred from January 1, 2008, through May 31, 2012.

## ANALYSIS

### I. The District Court Did Not Impose a Sanction in Excess of the Actual Injury Caused by the Contempt.

¶9     Husband first contends that the district court erred by entering the $1,912,696 judgment against him "based on [his] alleged contempt in failing to refinance one piece of marital property." We review a district court's award of sanctions for an abuse of discretion. *Goggin v. Goggin*, 2013 UT 16, ¶ 26, 299 P.3d 1079.

¶10     Husband appears to misunderstand the nature and basis of the district court's judgment. He notes that a court "'does not have discretion to impose a sanction beyond the actual injury caused by the contemptuous behavior.'" (Quoting *id.* ¶ 52.) Husband asserts that his "failure to file the loan application on Phoenix Plaza did not cause the loss of the property or any

damages near $1.9 million" and concludes that "the $1.9 million Judgment entered against [him] as a distribution of marital property, based solely on [his] contempt in failing to apply for the refinancing of Phoenix Plaza, is not proper under the law and should be reversed."

¶11 If the facts were as Husband asserts, his argument might have some merit. However, the district court found three reasons to hold Husband in contempt: (1) failure to apply for a refinance within the time frame contemplated by the Stipulation or ever thereafter, as required by the divorce decree; (2) failure to submit an application for a refinance, as required by the divorce decree; and (3) failure to "[make] a single payment" toward the $1,912,696 that Husband agreed to pay to Wife under the Stipulation and that the divorce decree ordered him to pay. Accordingly, Husband's failure to refinance was not the district court's "sole" basis for finding Husband in contempt. Nor did the district court, as Husband asserts, "'impose a sanction beyond the actual injury caused by the contemptuous behavior'" by entering the judgment against Husband. (Quoting *Goggin*, 2013 UT 16, ¶ 52.) The sanction imposed on Husband as a result of his contempt was "thirty days in the Salt Lake County jail," which the district court suspended. The monetary judgment was not a sanction; rather, it was a mechanism for Wife to collect the money Husband had agreed, but failed, to pay her pursuant to the divorce decree. Entering judgment against Husband based upon the parties' stipulation was clearly within the district court's authority.[2]

¶12 For these reasons, we conclude that Husband has failed to show that the sanction and judgment imposed by the district court constituted an abuse of its discretion.

---

2. We note that the $1,912,696 judgment is equal to the amount Husband agreed, but failed, to pay under the Stipulation.

## II. The District Court Did Not Hold Husband in Contempt for Failing to "Go Back in Time."

¶13    Husband next contends that the district court erred by holding him in contempt for failing to comply with the refinancing provisions of the Stipulation as incorporated into the divorce decree.[3] Again, we review a district court's award of sanctions for an abuse of discretion. *Goggin v. Goggin*, 2013 UT 16, ¶ 26, 299 P.3d 1079.

¶14    Husband and Wife signed the Stipulation on November 2, 2007. The Stipulation required Husband to "re-finance the mortgage encumbering the Phoenix Plaza" within 120 days; it also required him to file "the loan refinance application within 15 days." The Stipulation was not incorporated into a court order until the December 31, 2008 divorce decree. Husband argues that he "should not be held in contempt of a December 31, 2008 court order requiring him to go back in time to make a loan application by November 17, 2007, i.e. within 15 days of the parties' November 2, 2007 Stipulation."

¶15    However, the district court did not hold Husband in contempt merely for failing to file the refinance application within fifteen days. On March 1, 2012, the district court made three findings in support of its contempt ruling. First, the court found that Husband "failed to apply for a loan to refinance the Phoenix Plaza mortgage within the time agreed *and has made no application at any time thereafter*." (Emphasis added.) Second, the court found that Husband "has still not submitted a mortgage refinance application." And third, the court found that Husband "has not made a single payment" toward the $1,912,696 he

───────────────

3. This argument is an outgrowth of Husband's earlier assertion that the sanction was "based solely on [Husband's] contempt in failing to apply for the refinancing of Phoenix Plaza." As noted above, that assertion is incorrect. *See supra* ¶ 11.

agreed to pay in the Stipulation and was ordered to pay in the divorce decree. Thus, the court's contempt ruling was based on Husband's ongoing inaction, not merely the fifteen-day period in 2007. The terms of the Stipulation were incorporated into the December 31, 2008 divorce decree, and Husband then failed to comply with those terms for over three years.

¶16     Accordingly, Husband has not demonstrated that the district court abused its discretion by holding him in contempt.

### III. The Mistake and Impossibility Alleged by Husband Were Not Defenses to Husband's Contempt.

¶17     Husband contends that the district court erred by ruling that, because the Utah Court of Appeals had previously rejected mistake and impossibility as reasons to set aside the Stipulation, Husband was precluded from asserting mistake and impossibility as defenses to the district court's determination that he was in contempt for continuing to fail to comply with the terms of the Stipulation incorporated into the divorce decree. Under the law-of-the-case doctrine, a decision made on an issue during one stage of a case is binding on successive stages of the same litigation. *IHC Health Servs. Inc., v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588. We review the application of the law-of-the-case doctrine for correctness. *Macris v. Sculptured Software, Inc.*, 2001 UT 43, ¶ 14, 24 P.3d 984.

¶18     Husband previously moved to set aside the Stipulation under the contractual defenses of mistake and impossibility. *Robinson v. Robinson*, 2010 UT App 96, ¶ 4, 232 P.3d 1081. The district court denied that motion, and Husband appealed. *Id.* ¶¶ 4–5. He argued that the parties had been mistaken as to the amount of money Phoenix Plaza would generate, the value it would have, the vacancy rate that would exist, whether the existing leases would be sufficient to secure a new loan on the property, whether the tenants would sign new leases, and whether Husband would be able to refinance the loan. *Id.* ¶ 10.

This court rejected Husband's arguments and affirmed, reasoning that Husband had not alleged a mistake that existed at the time the parties entered into the Stipulation and that Husband had accepted any risk of a mistake by entering into the Stipulation while aware that his knowledge was limited. *Id.* ¶¶ 10–11. Husband also argued that the parties' mistakes about the status of Phoenix Plaza made it impossible for him to comply with the Stipulation. *Id.* ¶ 4. Because Husband had not alleged an unforeseen event occurring after the Stipulation was signed, this court determined that the impossibility "defense [was] wholly inapplicable" *Id.* ¶ 12. Accordingly, this court affirmed the district court's denial of the motion to set aside the Stipulation.

¶19  Despite losing his first appeal, Husband did not comply with the divorce decree, which incorporated the Stipulation's terms. And nearly two years later, the district court held Husband in contempt for failing to do so. Husband argued that contempt was inappropriate due to mistake or impossibility. The district court ruled that this court's determination that neither mistake nor impossibility were reasons to set aside the Stipulation precluded Husband from claiming them as excuses for his continuing failure to comply with the divorce decree entered based on the Stipulation.

¶20  Now on appeal for a second time, Husband asserts that "although [he] did not prevail on his attempt to have the Stipulation set aside based on mistake or impossibility, he was entitled to raise these issues in defense to the contempt charges brought against him." Husband argues that, in order to find him in contempt, the district court was required to find that he knew what was required, had the ability to comply, and intentionally failed to do so. However, without regard to the correctness of the exact procedure followed by the district court, Husband's mistake and impossibility defenses are meritless.

¶21    In the previous appeal, this court explained that a defense of mistake was unavailable because Husband did not allege any mistake that may have existed at the time he entered into the Stipulation. *Robinson*, 2010 UT App 96, ¶ 10. Rather, "the evidence Husband offer[ed] to show that the parties were mistaken as to the value of [Phoenix Plaza] [spoke] only to the value of the plaza *after* events unfolded regarding the expiring leases." *Id.* (emphasis in original). "Husband set[] forth no evidence that *at the time* [*the Stipulation*] *was signed* the plaza was not worth the value the parties attributed to it." *Id.* (emphasis in original). Because no mistake existed at the time of the Stipulation, we fail to see how Husband could demonstrate that the same alleged mistake is a defense to the contempt ruling. Thus, even if the court should have considered this mistake as a defense to contempt, any error was harmless and must be disregarded. *See* Utah R. Civ. P. 61.

¶22    With respect to Husband's claim of impossibility, Husband concedes that the impossibility defense to a contract only discharges an obligation if an unforeseen event that makes performance of the obligation impossible or highly impracticable occurs after formation of the contract. He asserts, though, that "impossibility of performance can be a defense to an allegation of contempt." Husband cites *Bradshaw v. Kershaw*, 627 P.2d 528, 530 (Utah 1981), for the proposition that "no contempt [will lie] when the subject property was beyond the party's power to convey." However, *Bradshaw* is more nuanced than Husband's summation.

¶23    In *Bradshaw*, the appellant entered into a contract in 1970 to sell a parcel of land and a well permit to a buyer. *Bradshaw*, 627 P.2d at 529. The appellant then sold the land and well permit to other buyers later that year. *Id.* In 1973, the district court granted specific performance of the contract to the original buyer; the Utah Supreme Court affirmed that order in 1974. *Id.* at 530. The original buyer brought contempt proceedings against the appellant after he still did not convey the land and well

permit. *Id.* In 1976, the district court held appellant in contempt for his failure to comply with the 1973 order. *Id.* The appellant then conveyed the land but not the well permit. *Id.* Later in 1976, the appellant filed papers asserting for the first time that it was impossible for him to comply as to the well permit. *Id.* In 1979, the district court held appellant in continued contempt for failing to convey the well permit. *Id.* The Utah Supreme Court affirmed that ruling in all respects. *Id.*

¶24 The Utah Supreme Court explained that impossibility may be a defense to contempt in circumstances where the impossibility arose after the initial order: "Conceivably a person might, while he had the ability to comply therewith, deliberately fail to obey the court's order, and then after his contempt was complete lose the ability to perform, but he would still be guilty of past contempt." *Id.* at 531 (citation and internal quotation marks omitted). But "[a]s to impossibility as of the time of the initial order, appellant cannot raise that defense at this stage because it is now res judicata." *Id.*

¶25 Here, Husband does not argue that some unforeseen event has since occurred causing the loss of his ability to perform.[4] Rather, his argument apparently rests on the same factual basis as his impossibility claim in his previous appeal—that "due to the parties' mistaken assumptions regarding the status of the plaza's leases, it was impossible for him to secure the contemplated [refinancing] loan on the plaza." *See Robinson v. Robinson*, 2010 UT App 96, ¶ 4, 232 P.3d 1081. Husband simply asserts that "the elements for contempt are completely different, the issues are different, and even the burdens of proof are different, than what is required to set aside a contract based on mistake or impossibility." But Husband ignores that he was held in contempt for failing to comply with a court order based on a

---

4. For example, Husband does not claim that refinancing was impossible due to an unforeseen change in market conditions.

contract, i.e., the divorce decree incorporating the Stipulation's terms, by not filing an application for refinancing within the agreed upon time and for not paying to Wife the money he agreed to pay her. Accordingly, Husband has failed to show error in the district court's determination that his impossibility claim was barred because that claim had already been ruled upon.

## IV. The Law-of-the-Case Doctrine Bars Husband's Defenses Based on Allegations of Fraud.

¶26  Husband contends that the district court erred by ruling that res judicata barred him from raising Wife's alleged fraud as a defense to the contempt charges. Husband had raised the fraud allegations in his initial challenge to the validity of the Stipulation, and the district court had found that Wife "didn't engage in any fraudulent or deceptive behavior or bad faith." But when Husband appealed from the entry of the divorce decree, which incorporated the terms of the Stipulation, he challenged the district court's rulings on his mistake and impossibility claims without challenging the court's finding that Wife had not acted fraudulently, deceptively, or in bad faith. The district court here noted, "That issue was not taken up on appeal" and ruled that claim preclusion applied. The parties and the court appear to have meant the closely related law-of-the-case doctrine rather than true res judicata. *See State v. Waterfield*, 2014 UT App 67, ¶ 39 n.12, 322 P.3d 1194 ("Res judicata applies as between multiple cases while the law of the case doctrine applies to successive proceedings within one case."). Whether preclusive effect arises from either res judicata or the law-of-the-case doctrine presents a question of law, and we review the district court's resolution of that question for correctness. *See Macris v. Sculptured Software, Inc.*, 2001 UT 43, ¶ 14, 24 P.3d 984 (as to the law-of-the-case doctrine); *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 17, 16 P.3d 1214 (as to res judicata).

¶27    Husband argues that he "could not have raised the issue of fraud as a defense to the contempt charges" in the earlier appeal, because those charges arose only after the Stipulation was upheld on appeal. He asserts that "the issue as to whether fraud may be a defense to set aside the Stipulation is not identical to the one presented in the instan[t] action, i.e. using fraud as a defense to the contempt charges that were later brought against [Husband]."

¶28    We see Husband's argument about Wife's alleged fraud as simply an attempt to relitigate an issue already decided during the course of this lengthy litigation. The district court upheld the Stipulation after finding that, among other things, Wife had not engaged in "any fraudulent or deceptive behavior or bad faith," and Husband did not challenge that finding on appeal. *See Robinson*, 2010 UT App 96. The court's finding therefore became part of the law of the case. *Cf. Thurston v. Box Elder County*, 892 P.2d 1034, 1037 & n.2, 1038 (Utah 1995) (noting that failure of the parties on appeal to challenge a trial court's ruling renders that ruling binding on the appellate courts). Husband then sought to argue that his contempt in failing to comply with the decree based on the Stipulation was excusable because, in his view, Wife *did* commit fraud. The underlying factual issue is identical—whether Wife committed fraud. The only difference is the legal consequence: fraud as a defense to contempt rather than fraud as a reason to set aside the Stipulation.[5] Because the law of the case is that Wife did not commit fraud, Husband cannot now raise a defense based on Wife having committed fraud.

¶29    Husband has failed to demonstrate error in the district court's ruling that he was precluded from arguing a new legal

---

5. Indeed, we cannot see how Husband could prevail on his claim that his contempt was excused by fraud when no fraud had ever been proven.

consequence based on a factual predicate the court had already rejected.

### V. The District Court Did Not Rule on the Viability of Separate Actions Based on Husband's Fraud Claims.

¶30 Husband next contends that "it was improper for the divorce court to state that [Husband's] tort claims, including his claims for fraud, are barred under the doctrine of claim preclusion or res judicata, simply because he did not raise them in this divorce action." This contention is inadequately briefed. *See* Utah R. App. P. 24(a). Husband does not explain how the substance of this contention differs from his claim that Wife committed fraud (as discussed in Part IV), nor does Husband identify any new legal effect stemming from the court's statement. Indeed, the district court here did not adjudicate Husband's separate fraud actions. Rather, it found that his allegations of fraud were not a valid basis to set aside the Stipulation or to excuse Husband's failure to comply with the decree incorporating that Stipulation. In any event, the contention appears to be immaterial, given that Husband has raised and lost his fraud claims in a separate case, which we affirm today without resort to principles of res judicata. *See Robinson v. Robinson*, 2016 UT App 33.

### VI. Husband Cannot Relitigate the Issue of Whether the District Court Could Enforce the Parties' Stipulation Without Entering Further Findings.

¶31 Husband contends that "the district court abused its discretion by enforcing a stipulation knowing that its terms did not provide for a fair and equitable distribution of the parties' marital assets." We review a district court's property division determinations for an abuse of discretion, so long as those determinations are based upon adequate factual findings. *See Hodge v. Hodge*, 2007 UT App 394, ¶ 3, 174 P.3d 1137.

¶32    This contention appears to be largely a rehash of an issue decided in Husband's first appeal:

> Husband next argues that the district court erred in failing to make a determination that the division of assets contained in the stipulation was fair and reasonable. But the district court did discuss whether the division of the properties was equitable . . . . Husband correctly asserts that a stipulation dividing property between divorcing parties should be adopted only if the court believes it to be fair and reasonable. But Husband provides no authority for his resulting assertion that a district court *may not* enforce a stipulation unless the district court makes a formal finding that it is fair and reasonable. And the presumption seems to be the exact opposite, that is, that a stipulation will ordinarily be enforced unless the court finds it to be *un*fair or *un*reasonable. Thus, from the district court's decision to enforce the stipulation, we assume—and have no findings that would indicate otherwise—that the court determined that the property division was equitable.

*Robinson v. Robinson*, 2010 UT App 96, ¶ 13, 232 P.3d 1081 (emphases in original) (citations and internal quotation marks omitted).

¶33    Here, Husband repeats this argument, simply adding his assertion that the district court *knew* that the Stipulation was unfair or inequitable. He draws support for this assertion from two sources. First, he points (again) to the absence of a formal fairness determination by the district court. This resurrected claim borders on frivolity. Second, Husband claims that "the court did not make any attempt to see that the marital distribution was fair and equitable." But, as this court's prior opinion explained, the absence of findings does not lead to a

presumption that the district court abdicated its duty. Indeed, this court determined that the district court did not do so.

¶34 Husband has not identified anything in the record or in the district court's many rulings to suggest that the court knowingly condoned inequity;[6] accordingly, this court's prior ruling on this issue stands.

## VII. The Wrongful Lien Statute Applies to Lis Pendens and the District Court Had Jurisdiction to Release the Lis Pendens and Made Sufficient Findings to Do So.

¶35 Husband contends that the district court erred by finding the lis pendens he recorded on Phoenix Plaza and another commercial property were wrongful liens and by ordering them removed. Husband argues that Utah does not recognize lis pendens as wrongful liens, that Wife's motions to release the lis pendens were improperly filed in the court hearing the divorce action rather than the court hearing the fraud action on which he based the lis pendens, and that the divorce court failed to make sufficient findings. We review a district court's interpretation and application of a statute for correctness. *Bott v. Osburn*, 2011 UT App 139, ¶ 5, 257 P.3d 1022.

¶36 Husband relies on Utah Code section 38-9-2(2), which provided that the wrongful lien statute "shall not prevent a person from filing a lis pendens in accordance with Section 78B-6-1303 or seeking any other relief permitted by law." Utah Code

---

6. "Lawyers shall not, without an adequate factual basis, attribute to other counsel or the court improper motives, purpose, or conduct." Utah R. Jud. Admin. 14-301(3) (setting forth standards of professionalism and civility).

Ann. § 38-9-2(2) (LexisNexis 2005).[7] Section 78B-6-1303 provides that "[e]ither party to an action affecting the title to, or the right of possession of, real property may file a notice of the pendency of the action with the county recorder . . . ." Utah Code Ann. § 78B-6-1303(1) (LexisNexis 2012). The interplay between these two statutes was addressed in *Eldridge v. Farnsworth*, 2007 UT App 243, 166 P.3d 639. Husband characterizes *Eldridge* as holding that "the filing of a lis pendens did not constitute a wrongful lien because of the explicit exception in [Utah Code section 38-9-2(2).]" (Citing *Eldridge*, 2007 UT App 243, ¶¶ 47–49.) On this basis, Husband asserts that "a lis pendens cannot be a 'wrongful lien' as defined under Utah's Wrongful Lien Statute, because the filing of a lis pendens under § 78B-6-1303 is explicitly exempt from Utah's Wrongful Lien Statute under § [3]8-9-2(2)."

¶37    However, Husband's argument misconstrues the holding of *Eldridge*. In *Eldridge*, the trial court declined to award to the prevailing defendants treble damages, attorney fees, and costs under the wrongful lien statute because it ruled that the particular lis pendens at issue did not constitute a wrongful lien. *Eldridge*, 2007 UT App 243, ¶ 1. The defendants appealed, arguing that the trial court should have found the lis pendens wrongful because it was filed in bad faith. *Id.* ¶ 47. They further argued that even if it was not wrongful for that reason, it became wrongful once the trial court determined the plaintiffs were not likely to succeed and dissolved a temporary restraining order. *Id.* This court affirmed the trial court's ruling, noting that "when evaluating [the plaintiffs'] lis pendens" under the wrongful lien statute, "the trial court was required to evaluate its validity based on the facts known at the time it was recorded, not at a later point in time after evaluating the merits." *Id.* ¶ 50. *Eldridge*

---

7. This statute has since been renumbered without changes relevant here. *See* Utah Code Ann. § 38-9-103(2) (LexisNexis 2014).

therefore explains the point at which the good or bad faith of the party who filed the lis pendens should be evaluated under the wrongful lien statute. It does not, as Husband asserts, "explicitly" articulate a blanket exception to the wrongful lien statute for all lis pendens. Indeed, by describing the correct application of the statutes to one another, *Eldridge* contradicts Husband's claim that the "plain, unambiguous language of § 38-9-2(2) . . . specifically exempts the filing of a lis pendens in a pending case[] from the scope of Utah's Wrongful Lien Statute."

¶38   Having determined that the wrongful lien statute can apply to the filing of a lis pendens, we turn to Husband's argument that a motion to release a lis pendens must be filed in the same case as the case to which the lis pendens applies. The lis pendens statute provides that parties affected by the lis pendens "may make a motion to the court in which the action is pending to release the notice." Utah Code Ann. § 78B-6-1304(1) (LexisNexis 2012). "A court shall order a notice released if," after receiving the motion, "the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim that is the subject of the notice." *Id.* § 78B-6-1304(2).

¶39   Husband's lis pendens was captioned with case number 110412982 in the West Jordan Department of the Third Judicial District Court. This number corresponds to Husband's separate fraud lawsuit against Wife. However, Wife's motion to nullify the lis pendens was filed in the divorce action, which is case number 074900501 in the Salt Lake Department of the Third Judicial District Court. The court hearing the divorce action then granted the motion to nullify. That court suggested three reasons for rejecting Husband's claim that the motion to nullify was filed in the wrong court. First, it reasoned, because "the property in question is a marital asset subject to the jurisdiction of this court" and because "this court has in the past entered orders associated with that property," "this court respectfully submits that it has the authority to issue orders in aid of its jurisdiction or orders

that are necessary or appropriate to carry out or enforce its prior orders." Second, the court noted that section 78B-6-1304(1) was phrased permissively, suggesting that courts other than the one responsible for the action to which the lis pendens pertains are also able to adjudicate motions related to the lis pendens' validity. Third, the court noted that the fraud action was also pending in the Third Judicial District Court, albeit in a different department and before a different judge than the divorce case.

¶40 On appeal, Husband ignores the district court's reasoning and simply asserts that the divorce court "intruded upon the exclusive jurisdiction of the West Jordan Court." But Husband provides no authority suggesting that the court's assertion of jurisdiction was inappropriate. Similarly, Husband does not explain why, or even explicitly claim that, the West Jordan and Salt Lake departments of the Third Judicial District Court do not constitute the same court.[8] Husband's argument in this regard is therefore inadequately briefed. *See* Utah R. App. P. 24(a)(9), *see also Salt Lake County v. Butler, Crockett & Walsh Dev. Corp.*, 2013 UT App 30, ¶ 28, 297 P.3d 38 ("This court will not reverse a ruling of the trial court that rests on independent alternative grounds where the appellant challenges only one of those grounds."); *Benns v. Career Serv. Review Office*, 2011 UT App 362, ¶ 2, 264 P.3d 563 (per curiam) ("If an appellant does not challenge the lower court's basis for its judgment, the lower court's determination is placed beyond the reach of [the appellate courts].").

¶41 Husband further argues that "the court in which the motion is made [must] make a finding by a preponderance of the evidence as to the probable validity of the real property claim

---

8. In the law-of-the-case context, Utah courts have noted that "two judges, while different persons, constitute a single judicial office." *Gillmor v. Wright*, 850 P.2d 431, 439–40 (Utah 1993) (Orme, J., concurring).

contained in the action, and that did not occur in this case by either court." It is true that, under section 78B-6-1304(2)(b), a court shall order a lis pendens released if it makes such a finding. However, the lis pendens statute requires the lis pendens to satisfy other requirements as well. *See* Utah Code Ann. § 78B-6-1303. For example, "[e]ither party to an action affecting the title to, or the right of possession of, real property may file" a lis pendens, and the lis pendens "shall contain" the parties' names, the object of the action, and a description of the affected property. *Id.* We see no reason why failure to comply with these preliminary requirements should not also be grounds to release the lis pendens.

¶42    Here, the district court released the lis pendens because it found that "[t]he Lis Pendens provides no notice of claim or interest to the Property." Husband does not challenge this finding. Because this finding alone is sufficient to invalidate the lis pendens, Husband cannot show that the district court erred by failing to nevertheless continue on to an analysis of "the probable validity of the real property claim contained in the pending action." *See Butler, Crockett & Walsh*, 2013 UT App 30, ¶ 28.

¶43    We conclude that Husband has failed to demonstrate error in the district court's decision to release the lis pendens.

### VIII. The District Court Correctly Awarded Attorney Fees to Wife.

¶44    Husband contends that the district court erred by failing to determine what portion of the attorney fees awarded to Wife related to establishing the division of the parties' property and by failing to enter findings regarding need, ability to pay, and reasonableness of the fees. We generally review a district court's decision regarding attorney fees in a divorce proceeding for an abuse of discretion. *Connell v. Connell*, 2010 UT App 139, ¶ 6, 233 P.3d 836. However, when we review an award of attorney fees

pursuant to a contract, we review the district court's interpretation of the contract language for correctness. *PC Crane Serv., LLC v. McQueen Masonry, Inc.*, 2012 UT App 61, ¶ 6, 273 P.3d 396.

¶45    Utah Code section 30-3-3 forms the statutory basis for an attorney fees award in a divorce action. "Utah Code section 30-3-3 creates two classes of attorney fees—those incurred in *establishing* court orders and those incurred in *enforcing* court orders[.]" *Connell*, 2010 UT App 139, ¶ 28 (emphases in original). Because the two classes have different purposes, the requirements for an award of each class of attorney fees are also different. *Id.* ¶ 29. "Fees awarded [in the first class] must be based on the usual factors of need, ability to pay, and reasonableness." *Id.* ¶ 28. "By contrast, in awarding fees [in the second class], the court may disregard the financial need of the moving party." *Id.* (citation and internal quotation marks omitted).

¶46    Here, there was also a contractual basis for an attorney fees award. The Stipulation provided, "The prevailing party to an action for breach of a term of this Agreement shall be entitled to his or her attorneys fees and costs." This provision was incorporated into the decree of divorce: "The prevailing party to an action for breach of a term of the Agreement shall be entitled to his or her attorneys fees and costs." The decree itself thus provided a basis for an award of fees in addition to the statutory bases set out in Utah Code section 30-3-3.

¶47    After this court upheld the Stipulation in *Robinson v. Robinson*, 2010 UT App 96, 232 P.3d 1081, the parties endured several additional years of litigation. It appears that all of these subsequent proceedings concerned the enforcement of the provisions of the divorce decree incorporated from the Stipulation, whether by judgments, court-ordered sale of property, or contempt charges. For example, the contempt charges concerned Husband's failure to refinance Phoenix Plaza,

failure to even apply for a refinance of Phoenix Plaza, and failure to pay Wife $1,912,696, all of which were requirements of the divorce decree. Similarly, the court order requiring the sale of Phoenix Plaza was aimed at generating liquid funds so that Wife could be paid under the terms of the divorce decree.

¶48    The district court's findings of fact with regard to attorney fees stated, "The Court finds that [Wife] should be awarded her attorneys' fees and costs incurred from January 1, 2008 through May 31, 2012" and "[Wife] was also previously awarded attorneys' fees and costs . . . in the Court's Order entered April 12, 2013 . . . and that Order stands." The court's final order repeated these findings.

¶49    There are two plausible readings of the court's order. The court may have awarded what would be essentially contractual attorney fees to Wife pursuant to the Stipulation. Alternatively, the court may have awarded statutory attorney fees to Wife pursuant to section 30-3-3.

¶50    On appeal, Husband asserts that the district court's findings on this issue fail to distinguish fees incurred in proceeding to trial from fees incurred to enforce existing orders.[9] This is a challenge to the adequacy of the findings supporting a statutory award. But Husband does not raise an argument regarding whether the basis for the attorney fees award was contractual or statutory. Nor did he preserve such a claim for

---

9. In support of this argument, Husband cites *Moon v. Moon*, 1999 UT App 12, ¶ 28, 973 P.2d 431, for the proposition that "because the fees from each proceeding were lumped together without distinction, the appellate court could not conduct any meaningful review and the matter was remanded to the district court to more clearly enunciate its findings with respect to the two types of fees." But in *Moon*, this court actually affirmed the attorney fees awards made by the district court. *Id.* ¶¶ 35–38.

appeal. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 ("Issues that are not raised at trial are usually deemed waived."); *see also Wohnoutka v. Kelley*, 2014 UT App 154, ¶¶ 3–4, 330 P.3d 762 (explaining that "[t]he preservation requirement . . . ensures that both the issue on appeal and the evidence necessary to decide it have been presented to the trial court" which is better positioned to consider the issue). Husband's arguments relating to the propriety of a statutory claim for attorney fees therefore fail. *Cf. Salt Lake County v. Butler, Crockett & Walsh Dev. Corp.*, 2013 UT App 30, ¶ 28, 297 P.3d 38 ("This court will not reverse a ruling of the trial court that rests on independent alternative grounds where the appellant challenges only one of those grounds."); *Benns v. Career Serv. Review Office*, 2011 UT App 362, ¶ 2, 264 P.3d 563 (per curiam) ("If an appellant does not challenge the lower court's basis for its judgment, the lower court's determination is placed beyond the reach of [the appellate courts].").

¶51   Moreover, even if the award were based on statute, the only court orders implicating the establishment of the divorce decree were issued prior to this court's previous decision affirming those orders. It appears that the proceedings undertaken after *Robinson v. Robinson*, 2010 UT App 96, 232 P.3d 1081, were largely if not entirely occasioned by Husband's continuing refusal to comply with the terms of the Stipulation and the divorce decree. This would make them "enforcement" rather than "establishment" orders. Husband points to the fact that the district court modified portions of its earlier order, asserting that the modifications fulfilled an "equalizing function" and thus should be equated with "establishing" court orders. But the modifications Husband cites appear to have been necessitated by events occurring after the 2010 decision. Thus, the need for the modifications may well have never arisen had Husband promptly complied with the terms of the Stipulation upon signing it on November 2, 2007; upon receiving the December 31, 2008 decree of divorce; or upon the issuance of this court's April 22, 2010 decision. Husband provides no authority

or analysis to explain why modifications necessitated by his own recalcitrance should be categorized as "establishing" rather than "enforcement" court orders.

¶52    We next consider Husband's contention that the district court failed to enter detailed factual findings as to need, ability to pay, and reasonableness of the attorney fees awarded to Wife. When a district court makes a statutory award of attorney fees pursuant to subsection 1, the order-establishment prong of section 30-3-3, it should consider the recipient spouse's financial need, the payor spouse's ability to pay, and the reasonableness of the requested fees. *Connell v. Connell*, 2010 UT App 139, ¶ 27, 233 P.3d 836. But there is no equivalent requirement that a district court consider these factors when awarding attorney fees pursuant to a contract or under the enforcement prong of section 30-3-3. *See Jones v. Riche*, 2009 UT App 196, ¶ 2, 216 P.3d 357 (noting that contractual attorney fees clauses are not discretionary and must be applied strictly in accordance with the contract terms); *Gore v. Grant*, 2015 UT App 113, ¶ 25, 349 P.3d 779 ("In assessing a request for enforcement [attorney] fees [pursuant to Utah Code section 30-3-3(2)], the district court may disregard the financial need of the moving party." (citation and internal quotation marks omitted)). As we have explained, we see no basis for classifying the attorney fees award here as related to orders implicating the establishment of the decree or any other order.

¶53    We conclude that Husband's arguments relating to attorney fees under the establishment prong of section 30-3-3 fail to demonstrate error in the district court's award of attorney fees.

### IX. The District Court Acted Within Its Discretion in Denying Husband's Request for an Attorney Fees Award.

¶54    Husband next contends that the district court erred by failing to determine what fees were incurred in the contempt

proceedings and by failing to award attorney fees to Husband as the prevailing party. We generally review a district court's attorney fees decisions in a divorce proceeding for an abuse of discretion. *Connell v. Connell*, 2010 UT App 139, ¶ 6, 233 P.3d 836. Where that decision concerns the proper interpretation of a statute, we review the district court's interpretation for correctness. *Id.*

¶55   "In any action to enforce . . . [the] division of property in a domestic case, the court may award costs and attorney fees upon determining that the party substantially prevailed upon the claim or defense." Utah Code Ann. § 30-3-3(2) (LexisNexis 2012). "The court, in its discretion, may award no fees or limited fees against a party if the court finds the party is impecunious or enters in the record the reason for not awarding fees." *Id.*

¶56   Husband argues that the district court "erred in failing to make any determination as to what fees were incurred on the contempt claims." He asserts that he "prevailed on the majority of the contempt issues," and that the court nevertheless denied his attorney fees request. He notes that the court awarded Wife attorney fees "which in effect resulted in [Husband] paying [Wife] for her attorneys' fees on the very contempt charges, [Husband] prevailed on at trial."

¶57   On March 1, 2012, the district court entered findings related to certain contempt claims against both Husband and Wife. The court ruled that "[Husband] is in contempt" and that "[Wife] is not in contempt." It then sentenced Husband to "thirty days in the Salt Lake County jail, which sentence is suspended at the present time."

¶58   On May 29, 2013, the district court entered additional findings of fact and conclusions of law relating to other contempt charges. Although it found that "[Husband] filed lis pendens on the parties' properties to prevent [court-ordered] sales," it declined to hold Husband in contempt for doing so due

to the court's lingering doubts "as to whether Utah's Wrongful Lien Act should apply to a lis pendens." It disapproved of Husband's actions on four other contempt charges, but declined to find him in contempt because Wife had undertaken similar actions and thus had "unclean hands [and was] not in a position to enforce" contempt orders against Husband. The court found that Wife had not proven two of the contempt charges by clear and convincing evidence. And it affirmed two previous findings of Husband's contempt. In short, on four counts both parties had acted in contempt of court, on two counts Wife had failed to show Husband was in contempt, and on two counts the court held Husband in contempt.

¶59    We read these findings as the reason the district court declined to award attorney fees to Husband and readily conclude that the district court acted within its discretion when it declined to do so. *See* Utah Code Ann. § 30-3-3(2).

## X. Wife is Entitled to an Award of Attorney Fees Incurred on Appeal.

¶60    Wife seeks an award of her attorney fees incurred on appeal. Generally, a party that received attorney fees below and prevails on appeal is entitled to fees reasonably incurred on appeal. *Giles v. Mineral Resources Int'l, Inc.*, 2014 UT App 259, ¶ 25, 338 P.3d 825. Wife received attorney fees below and prevailed on appeal. Accordingly, Wife is entitled to an award of attorney fees reasonably incurred on appeal.

## CONCLUSION

¶61    Husband has not demonstrated that the district court abused its discretion by holding him in contempt, by sanctioning him, or by refusing his request for attorney fees. Husband has not shown that the district court erred in determining that his mistake, impossibility, and fraud defenses to contempt were

barred. Nor has he demonstrated error in the district court's decision to release the lis pendens or in its award of attorney fees to Wife. Husband did not sufficiently brief his other claims.

¶62    We affirm the district court in all respects. We remand this case to the district court for the limited purpose of calculating the amount of Wife's attorney fees incurred on appeal and awarding them.

_____