**2015 UT App 19**

## THE UTAH COURT OF APPEALS

FIDELITY NATIONAL TITLE INSURANCE COMPANY,
Plaintiff and Appellant,
*v.*
KENTON WORTHINGTON,
Defendant and Appellee.

Opinion
No. 20130799-CA
Filed January 29, 2015

Third District Court, Salt Lake Department
The Honorable Tyrone E. Medley
No. 110908756

Bryce D. Panzer, Brett N. Anderson, and Scott R.
Taylor, Attorneys for Appellant

Michael D. Mayfield and Caroline L. Hermeling,
Attorneys for Appellee

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGE
MICHELE M. CHRISTIANSEN and SENIOR JUDGE RUSSELL W. BENCH
concurred.[1]

PEARCE, Judge:

¶1     A homeowner sought the assistance of his sister and her
husband in refinancing his house. The three worked with a title

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah R. Jud.
Admin. 11-201(6).

company partly owned by the sister to secure a loan from a bank. After the refinancing loan closed, a mechanic's lien was recorded upon the house. The title company's underwriter paid out to the bank to satisfy the lien and then sued the homeowner, his sister, his sister's husband, and the sister's title company. For a variety of reasons, including bankruptcies and the dissolution of the title company, the only parties left standing in the litigation are the homeowner and the underwriter. The underwriter alleged that the homeowner committed fraud and participated in his sister's breach of fiduciary duty. The question before us is whether the district court erred in dismissing the underwriter's complaint against the homeowner. Because the underwriter did not plead any false representation made by the homeowner and did not plead any duty to disclose owed by the homeowner, we conclude that the fraud claim against him was improperly pleaded and therefore properly dismissed. Because the underwriter did not allege that the homeowner took any specific action to further his sister's alleged breach of fiduciary duty, we conclude that the district court did not err by dismissing the breach of fiduciary duty claim.

BACKGROUND

¶2 Kenton Worthington—the homeowner—purchased a half-finished house (the Property) from a construction company with the understanding that the construction company would complete it. To finance the purchase, Worthington granted a first trust deed to a lender for $1,100,000 and a second trust deed to the construction company for $585,000. Worthington later sought to refinance these obligations and obtain additional capital to finish construction. To this end, Worthington's brother-in-law (Brother-in-Law), a mortgage broker, helped him obtain a refinancing loan from a second bank (the Bank). The loan was for $2,596,000 and was characterized as a refinance of existing obligations rather than as a construction loan. Priority Title Insurance Agency, a company partly owned by Worthington's sister (Sister), handled the closing of the refinancing loan.

Priority Title was an agent of its underwriter, Fidelity National Title Insurance Company (Fidelity).

¶3     According to Fidelity's complaint, the refinancing loan's closing was conditioned upon, "among other things, obtaining assurance that [the Bank] would have a first priority lien on the Property, that there would be no other liens of record on the title, and that there was no subordinate financing." When the loan closed, Priority Title disbursed funds to pay off the trust deeds held by the first lender and the construction company. Both of those entities reconveyed their trust deeds. Priority Title also issued a lender's title-insurance policy in favor of the Bank in the amount of $2,596,000. The policy provided coverage to the Bank against potential mechanic's liens claiming priority over the Bank's trust deed.

¶4     Worthington and the construction company were unable to agree on the balance still owing for construction. Two months after the refinancing loan closed, their dispute boiled over into litigation. The construction company filed a Notice of Lien against the Property, asserting a $600,000 mechanic's lien. Because construction on the Property had commenced before the initial sale to Worthington, the construction company asserted that its lien had priority over the refinancing loan. The Bank was joined to the litigation and tendered its claim to Fidelity under the title-insurance policy. Fidelity settled that case by paying the construction company approximately $490,000.

¶5     Fidelity then filed suit against Worthington, Sister, Brother-in-Law, and Priority Title (collectively, the Defendants). Fidelity's complaint identified two claims for relief that are pertinent to this appeal: (1) one titled "Fraud, Intentional Misrepresentation, and Civil Conspiracy" and (2) one for "Breach of Fiduciary Duty." Sister, Brother-in-Law, and Priority Title are no longer in the case and are not parties to this appeal.

¶6     Worthington moved to dismiss Fidelity's claims against him, arguing that they were barred by the economic loss

doctrine and that the claims should be dismissed for failing to state a claim upon which relief could be granted. *See* Utah R. Civ. P. 12(b)(6). In particular, Worthington argued that the fraud claim failed because Fidelity did not plead "the circumstances constituting fraud . . . with particularity." *See id.* R. 9(b). The district court agreed with Worthington and dismissed the claims against him with prejudice. The court also determined that the claims were "based solely and inextricably on alleged contractual duties" and were therefore the type of "tort claims barred by the economic loss rule, because the claimed duties [were] not independent of the contract."[2] The court further stated that it could not "find that . . . Mr. Worthington owed any legal duties to [Fidelity]." The court incorporated by reference "all of the case law authorities and remaining grounds set forth in [Worthington's] Memoranda in support and reply, which serve as the basis of the Court's decision." Fidelity appeals.

## ISSUE AND STANDARD OF REVIEW

¶7      Fidelity argues that the district court erred when it dismissed Fidelity's complaint against Worthington. The court dismissed Fidelity's complaint after it determined that Fidelity failed to state claims upon which relief could be granted, *see* Utah R. Civ P. 12(b)(6), and that the economic loss rule barred Fidelity's claims. For the purposes of a rule 12(b)(6) dismissal, we accept the complaint's factual allegations as true. *Snow v. Chartway Fed. Credit Union*, 2013 UT App 175, ¶ 2 n.2, 306 P.3d 868. As a result, an appeal from a rule 12(b)(6) dismissal presents only questions of law, and we review the district court's ruling for correctness. *Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 8, 335 P.3d 885.

---

2. Because we affirm based upon the pleading deficiencies, we do not address the economic loss doctrine arguments.

ANALYSIS

I. Fraud-Based Claims

¶8      Fidelity's first claim for relief is a mélange of fraud-based causes of action under the title "Fraud, Intentional Misrepresentation, and Civil Conspiracy." Rule 12(b)(6) of the Utah Rules of Civil Procedure permits the dismissal of complaints that fail to state claims upon which relief can be granted. In the context of fraud-based causes of action, rule 9(b) provides that the circumstances constituting fraud must be pleaded with particularity in order to state a claim. Utah R. Civ. P. 9(b).

¶9      Fidelity pleaded that each of the Defendants knew that a mechanic's lien could be filed against the Property and knew that Fidelity would not underwrite an insurance policy for a property subject to a possible mechanic's lien. Fidelity claimed that "[e]ach of the Defendants failed to disclose, or require the disclosure of the [potential lien] to Fidelity for the purpose of inducing Fidelity to issue the lender's policy of title insurance to [the Bank]." Fidelity also alleged that "Priority Title and [Sister] had a specific duty to disclose to Fidelity all facts and information [relevant] to the issuance of the lender's policy of title insurance, and intentionally failed to do so." Although the complaint lumped fraud, intentional misrepresentation, and civil conspiracy together, we will consider fraud and intentional misrepresentation together and civil conspiracy separately.

A.      Fraud

¶10     A claim of fraud requires the plaintiff to allege:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base

such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Webster v. JP Morgan Chase Bank, NA*, 2012 UT App 321, ¶ 16, 290 P.3d 930 (citation and internal quotation marks omitted); *see also Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35 (reiterating that, in the context of a motion for summary judgment, conclusory allegations of those elements, unsupported by relevant surrounding facts, are insufficient).

¶11 Here, Fidelity's complaint fails to allege the elements of a fraud claim with the particularity our rules require. *See* Utah R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). Rule 9(b)'s specificity requirement modifies the general rule that requires only a "short and plain" statement of the claim demonstrating entitlement to relief and a demand for judgment identifying the relief sought. *See id.* R. 8(a). A number of reasons have been advanced to justify the more stringent pleading requirement. Commentators have explained that rules analogous to our rule 9(b) exist to discourage "lightly made claims charging the commission of acts that involve some degree of moral turpitude." *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1296 (3d ed.). Others have suggested that the rule stems from the common law's historical reluctance to reopen transactions. *John P. Villano Inc. v. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y. 1997) (citing William M. Richman, Donald E. Lively & Patricia Mell, *The Pleading of Fraud: Rhymes Without Reason*, 60 S. Cal. L. Rev. 959, 960–67 (1987)). The rule also serves to deter filing exploratory suits with little information in the hopes that discovery will uncover information to support the allegations. *See Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 255 (6th Cir. 2012) ("Rule 9(b) [of the Federal Rules of Civil Procedure] is designed, not

only to put defendants on notice of alleged misconduct, but also to prevent fishing expeditions . . . ." (citation and internal quotation marks omitted)); *Cornejo v. JPMorgan Chase Bank*, No. CV 11-4119 CAS(VBKx), 2012 WL 628179, at *4 (C.D. Cal. Feb. 27, 2012) ("Plaintiffs' assertion that they will 'not know until discovery' the specific misrepresentations made is precisely what Rule 9(b) [of the Federal Rules of Civil Procedure] seeks to prevent.").

¶12   Here, Fidelity did not identify any false representation Worthington made to Fidelity; rather, it asserted only that the Defendants as a group had failed to disclose information to Fidelity. Our supreme court has explained that a cause of action for fraud against multiple defendants must "supply . . . information regarding [each defendant's] personal participation in fraud." *Armed Forces Ins. Exch.*, 2003 UT 14, ¶ 21. For this reason, the district court did not err by dismissing the fraud claim.

¶13   Even if we could read the group allegations as directed solely at Worthington, the complaint avers only that Worthington "failed to disclose" the potential for a mechanic's lien. A defendant's failure to disclose must implicate the breach of a duty to be actionable. *See Russell/Packard Dev., Inc. v. Carson*, 2003 UT App 316, ¶ 33, 78 P.3d 616 (noting that, generally, silence in the absence of a duty to speak does not of itself constitute fraud), *aff'd*, 2005 UT 14, 108 P.3d 741; *see also Gilbert Dev. Corp. v. Wardley Corp.*, 2010 UT App 361, ¶ 21, 246 P.3d 131 (holding that a fraudulent nondisclosure claim required the plaintiff to show that the defendant had a legal duty to communicate the information at issue). Fidelity's complaint does not identify what duty Fidelity asserts Worthington owed to Fidelity that would have required him to disclose that there was a possibility (1) that a mechanic's lien might one day be filed

against the Property and (2) that the priority of such a lien might predate the Bank's interest.[3]

¶14    Because Fidelity's complaint did not identify any false representation Worthington made and did not identify any duty Worthington breached by failing to disclose information to Fidelity, Fidelity failed to plead fraud with the particularity rule 9(b) requires.

B.      Conspiracy to Commit Fraud

¶15    Fidelity's first claim for relief also alleged a civil conspiracy amongst the Defendants to commit fraud. The complaint asserted that the Defendants' "acts and omissions" "were undertaken as part of a conspiracy to defraud Fidelity, and to intentionally misrepresent the facts and circumstances, in order to induce Fidelity to issue a lender's policy of title insurance to [the Bank]." Fidelity claimed that "Priority Title and [Sister] were part and parcel of the conspiracy to mislead and defraud Fidelity" and that Worthington knew that neither Sister nor Priority Title would inform Fidelity or the Bank of the potential mechanic's lien.

¶16    A claim for civil conspiracy must allege the following elements: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987).

---

3. Fidelity did not allege that Worthington withheld information from Priority Title; to the contrary, the complaint asserts that the possibility of a mechanic's lien was "known to each of the Defendants," including Priority Title.

¶17    Here, Fidelity has not alleged facts to support its allegations. Specifically, the complaint lacks any facts showing a meeting of the minds. Rather, it states conclusorily that, "since each of the Defendants knew that [Sister] was [Worthington's] sister, and that [Brother-in-Law] was [Worthington's] brother-in-law, each of the Defendants knew that neither [Sister] nor [Brother-in-Law] would inform [Fidelity]" of the possibility of a mechanic's lien being filed. Thus, the complaint implied that familial relationships alone give rise to an inference of conspiracy when a sibling or her spouse is alleged to have breached a duty to disclose. Fidelity must do more to allege a meeting of the minds than simply imply that this element is satisfied when the defendants are related by blood or marriage.

¶18    Because Fidelity's complaint did not assert facts to show that Worthington, Sister, Brother-in-Law, and Priority Title agreed on a course of fraudulent behavior, Fidelity failed to plead civil conspiracy to commit fraud with the particularity required by rule 9(b). *See* Utah R. Civ. P. 9(b); *see also Coroles v. Sabey*, 2003 UT App 339, ¶ 39 & n.23, 79 P.3d 974 (explaining that rule 9(b)'s particularity requirement extends to civil conspiracy claims predicated on fraud and possibly even to non-fraud civil conspiracy claims).

¶19    Because we determine that Fidelity's complaint did not state the fraud and civil conspiracy claims with particularity, we hold that the district court correctly dismissed those claims for failure to state a claim upon which relief could be granted.

## II. Breach of Fiduciary Duty

¶20    Fidelity's second claim for relief alleged breach of fiduciary duty. Specifically, Fidelity argued that Priority Title and Sister breached the fiduciary duties they owed to Fidelity as insurance agents. With respect to Worthington, Fidelity alleged that he knew of that fiduciary relationship, that he knew that the refinancing loan could only close if the possibility of a mechanic's lien was concealed from Fidelity, and that he

"actively participated in Priority Title's and [Sister's] concealment" of that possibility. Fidelity asserted that Worthington was therefore "jointly and severally liable for the breach of fiduciary duty."

¶21    The district court's ruling stated that the court could not find that Worthington owed any legal duties to Fidelity. It also noted that "the claim that [Worthington] aided and abetted a fraud and conspiracy are not allegations pled in the Amended Complaint." On appeal, Fidelity argues that "[a]n independent duty exists not to participate in the breach of a fiduciary duty" and that the allegations in the complaint were "sufficient to state a claim against [Worthington] for participating in (aiding and abetting) the breach of fiduciary duty claim."

¶22    We note that the complaint does not expressly plead an aiding and abetting cause of action. Rather, the section of the complaint Fidelity relies upon is titled "Breach of Fiduciary Duty." That section does not contain the phrase "aiding and abetting." On appeal, Fidelity attempts to shoehorn the meaning of "aiding and abetting" into its use of the word "participated." Even assuming that this is sufficient to plead an aiding and abetting cause of action, Fidelity's complaint fails to state a claim upon which relief can be granted.

¶23    The sufficiency of the pleadings within a complaint "must be determined by the facts pleaded rather than the conclusions stated." *Franco v. Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 26, 21 P.3d 198 (citation and internal quotation marks omitted); *Foster v. Saunders*, 2005 UT App 264U, at para. 3 (per curiam). Here, Fidelity's complaint asserts that Priority Title and Sister breached their fiduciary duties to Fidelity. But the complaint does not allege any act Worthington performed in furtherance of those breaches. Fidelity's complaint claims only that Worthington "actively participated" in the breach. This allegation is purely conclusory rather than factual and is therefore insufficient to support a claim for relief. *See Chapman v. Primary Children's Hosp.*, 784 P.2d 1181, 1186 (Utah 1989) ("We

have stressed, and continue to hold, that mere conclusory allegations in a pleading, unsupported by a recitation of relevant surrounding facts, are insufficient to preclude dismissal or summary judgment."). Accordingly, dismissal pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure was appropriate.

CONCLUSION

¶24    Fidelity's complaint did not allege fraud or conspiracy to commit fraud with the particularity rule 9(b) of the Utah Rules of Civil Procedure requires. Fidelity's complaint also failed to allege facts to support a claim that Worthington aided and abetted Sister, or Priority Title, in breaching a fiduciary duty owed to Fidelity. The district court therefore correctly granted Worthington's motion to dismiss for failure to state a claim upon which relief could be granted. As a result, we need not consider whether the district court correctly applied the economic loss rule to Fidelity's fraud and breach of fiduciary duty claims. We affirm the district court's order dismissing the complaint.

¶25    Affirmed.

———————