2016 UT App 33

# THE UTAH COURT OF APPEALS

MICHAEL S. ROBINSON,
Appellant and Cross-appellee,

*v.*

DEBRA J. ROBINSON,
Appellee and Cross-appellant.

Opinion
No. 20140470-CA
Filed February 19, 2016

Third District Court, West Jordan Department
The Honorable Charlene Barlow
No. 110412982

F. Kevin Bond and Budge W. Call, Attorneys
for Appellant

Dean C. Andreasen and Diana Telfer, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGE GREGORY K. ORME concurred. JUDGE STEPHEN L.
ROTH concurred in Parts I, II, XI, and XII, and concurred in the
result, without opinion, in Parts III, IV, V, VI, VII, VIII, IX, and X.

CHRISTIANSEN, Judge:

¶1     Michael S. Robinson (Husband) appeals from the district
court's handling and eventual grant of both a motion to dismiss
and a motion for summary judgment in favor of defendants
Debra J. Robinson (Wife), Natalie D. Larson, Matthew R. Larson,
Kelly D. Larson, Derrick D. Larson, and Kaisa Cardall. Wife
cross-appeals the district court's denial of an award of attorney
fees. We affirm.

BACKGROUND

¶2      This piece of satellite litigation orbits Husband and Wife's contentious divorce. *See generally Robinson v. Robinson*, 2016 UT App 32; *Robinson v. Jones Waldo Holbrook & McDonough*, 2016 UT App 34; *Robinson v. Robinson*, 2010 UT App 96, 232 P.3d 1081.

¶3      After filing for divorce in February 2007, Husband and Wife attempted to disentangle the real property interests within their marital assets. On November 2, 2007, Husband and Wife came to a stipulated property settlement agreement (the Stipulation). *See Robinson v. Robinson*, 2016 UT App 32, ¶ 2 (discussing the terms of the Stipulation). Husband later moved to set aside the Stipulation, alleging that performance of his part of the Stipulation was impossible, that there had been a mutual mistake, and that Wife had fraudulently induced Husband to enter the Stipulation. The district court denied Husband's motion and incorporated the Stipulation into a decree of divorce entered on December 31, 2008. Husband appealed the denial of his motion, arguing impossibility and mutual mistake, but he did not raise a claim of fraud in the inducement. *See generally Robinson v. Robinson*, 2010 UT App 96, 232 P.3d 1081. This court affirmed. *See generally id.*

¶4      On September 7, 2011, Husband filed this civil action alleging fraud, breach of fiduciary duty, conversion, and civil conspiracy. His fraud and breach of fiduciary duty claims related to three causes of action, all of which sought relief primarily in the form of a declaration that the Stipulation and divorce decree were void. The complaint named as defendants Wife, three of her adult children, her daughter-in-law, and a friend of the daughter-in-law (collectively, Defendants).[1] Defendants filed a motion for summary judgment based on res judicata, waiver, and the assertion that some of the issues were

1. Wife took the lead in defending this action. The other defendants did not file any briefs or otherwise appear in this appeal.

duplicative of those in the ongoing divorce case. Defendants also filed a motion to dismiss on the grounds that the complaint failed to plead fraud with particularity and failed to state a claim upon which relief could be granted. The motion to dismiss also asserted that some of the causes of action pleaded by Husband were barred by the statute of limitations.

¶5    At the hearing, Husband argued that his September 2011 complaint had been timely filed because he had not discovered Wife's fraud and breach of fiduciary duty until October 2008. He further argued that his complaint was "in the nature of a rule 60(b), Utah Rules of Civil Procedure, motion for relief from a judgment based on fraud." He also argued that "time deadlines did not apply to rule 60(b) motions."

¶6    The district court adopted Defendants' statement of undisputed material facts, accepted as true Husband's statement of facts pertaining to the motion to dismiss, and noted that Husband was "a sophisticated businessman." The court rejected Husband's argument relating to rule 60(b), concluding that the complaint had been filed as a separate action and not as a rule 60(b) motion for relief to set aside any final orders made in the Robinsons' ongoing divorce action. The court noted that the applicable rule 60(b) time periods had long since passed and that a meritorious independent action alleging fraud can ultimately relieve the prevailing party from judgment.[2] The court ruled that some of Husband's claims were barred by the statute of limitations, that Husband had failed to plead his fraud claims with particularity, and that res judicata also barred the claims. The court granted both the motion to dismiss and the motion for summary judgment. Husband appeals those decisions. Wife cross-appeals the court's denial of her attorney-fee request.

---

2. The district court also ruled that there was no judgment in this case from which a rule 60(b) motion could have been brought. And it noted that Husband had not cited any authority holding that rule 60(b)'s "reasonable time" requirement tolled the applicable statute of limitations.

ISSUES AND STANDARDS OF REVIEW

¶7    Husband contends that the district court erred in ruling that rule 60(b) of the Utah Rules of Civil Procedure did not apply to relieve Husband from the judgment entered against him in the divorce case. We review the district court's interpretation and application of statutes and rules for correctness. *See Berneau v. Martino*, 2009 UT 87, ¶ 9, 223 P.3d 1128.

¶8    Husband also contends that the district court erred by granting Wife's motions to dismiss and for summary judgment. "For the purposes of a rule 12(b)(6) dismissal, we accept the complaint's factual allegations as true." *Fidelity Nat'l Title Ins. Co. v. Worthington*, 2015 UT App 19, ¶ 7, 344 P.3d 156. "As a result, an appeal from a rule 12(b)(6) dismissal presents only questions of law, and we review the district court's ruling for correctness." *Id.* We review a district court's legal conclusions and ultimate grant or denial of summary judgment for correctness, after viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

¶9    Wife contends that the district court erred by denying her request for an award of attorney fees. The grant or denial of an attorney-fee award pursuant to a contract is an issue of law that we review for correctness. *See Gardiner v. York*, 2006 UT App 496, ¶ 5, 153 P.3d 791. The grant of an attorney-fee award pursuant to the bad-faith attorney-fee statute requires findings that the underlying claims were meritless and pursued in bad faith. *See* Utah Code Ann. § 78B-5-825 (LexisNexis 2012); *Gallegos v. Lloyd*, 2008 UT App 40, ¶ 6, 178 P.3d 922. Whether an action or defense is meritless constitutes a legal conclusion that we review for correctness. *Gallegos*, 2008 UT App 40, ¶ 6. But the district court's finding as to bad faith is primarily factual, and we review the finding for clear error. *Id.*

ANALYSIS

I. Rule 60(b) Does Not Govern Independently Filed Actions.

¶10    Husband first contends that the district erred in ruling that rule 60(b) of the Utah Rules of Civil Procedure did not apply to Husband's continued attempts to seek relief from the judgment entered against him in favor of Wife in the divorce case. Rule 60(b) allows a party to file a motion to be relieved "from a final judgment, order, or proceeding" for six statutorily enumerated reasons. Utah R. Civ. P. 60(b). A motion under rule 60(b) "shall be made within a reasonable time and for [certain categories, including fraud], not more than 90 days after the judgment, order, or proceeding was entered or taken." *Id.*

¶11    Husband asserts that, because fraud is generally not a proper basis for a petition to modify a divorce decree, it was appropriate to bring his purported rule 60(b) motion as an independent action. Husband cites *Bayles v. Bayles*, 1999 UT App 128, 981 P.2d 403, as support for his suit and his claim that the time limits set forth in rule 60(b) do not apply. There, the court of appeals noted that "a claim of fraud contemplated in the context of [a] divorce is not generally a proper basis for a petition to modify a divorce decree, [and therefore the] only avenue for relief under the facts of [*Bayles* was] to file an independent action." *Id.* ¶ 17. This court concluded that "the party asserting a cause of action for fraud after the parties have entered into a stipulation that has been incorporated into an order of divorce contemplating the basis for the fraud claim should either file a Rule 60(b)(3) motion within the three month time limit, or file an independent action." *Id.* ¶ 20.

¶12    *Bayles* stands for the proposition that a post-divorce fraud cause of action may be brought as a rule 60(b) motion *or* filed as an independent action. It does not support Husband's apparent contention that a post-divorce fraud cause of action to relieve one party from a judgment may be filed as a hybrid composed of an independent fraud action stripped of the normally applicable three-year statute of limitations with rule 60(b)'s "reasonable

time" limitation grafted on instead. Indeed, the language of rule 60(b) maintains a firewall between independent actions and rule 60(b) motions: "The procedure for obtaining any relief from a judgment shall be by motion as prescribed [by rule 60(b)] *or* by an independent action." Utah R. Civ. P. 60(b) (emphasis added).

¶13    Because rule 60(b) motions and independent actions are governed by separate procedural regimes, we conclude that the district court did not err in ruling that the time limit provisions set forth in rule 60(b) did not apply to Husband's independently filed action.

## II. The Statute of Limitations Applies to Husband's Complaint.

¶14    Apparently claiming that his complaint was actually a hybrid rule 60(b) motion and independent action,[3] Husband contends that "it is not necessary that there be an order or judgment already entered in the independent action for Rule 60(b) to apply." As a result, in Husband's view, "independent actions filed under Rule 60(b) . . . are not limited by legal time constraints." However, as we have explained, there is no such thing as an independent action filed under rule 60(b). Rather, though an independent action is within the contemplation of the rule, rule 60(b) does not govern such an action, and the time limitations generally applicable to civil actions will apply. Thus, we conclude that the district court did not err in applying the statute of limitations to Husband's independent action for Wife's alleged fraud in the inducement.

## III. While the District Court Erred by Implicitly Converting the Motion to Dismiss into a Motion for Summary Judgment, the Error Was Harmless.

¶15    Husband next contends that the district court erred in ruling that his fraud claims, brought in September 2011, were

---

3. Husband's complaint does not purport to be a rule 60(b) motion and does not reference that rule.

barred by the applicable three-year statute of limitations. Specifically, he argues that the court considered materials outside the pleadings to reach its determination that Husband knew or should have known of the alleged fraud by December 2007.

¶16 In his complaint, Husband asserted that he did not discover the alleged fraud until October 2008. However, the district court looked to a pleading Husband had filed in the divorce case on February 12, 2008. In that pleading, Husband stated that his accountant had informed him of "a serious error" and had recommended an independent examination be undertaken "to ensure that [Wife] had not committed fraud or made a material misrepresentation." Husband attached a letter from the accountant to that effect, dated December 17, 2007. As a result, the district court determined that Husband knew or should have known of the alleged fraud as of December 2007. Accordingly, the court ruled that Husband's fraud claims were barred by the three-year statute of limitations.

¶17 A motion to dismiss admits the truth of the facts alleged in the complaint but challenges the plaintiff's right to relief based on those facts. *Osguthorpe v. Wolf Mountain Resorts, LC*, 2010 UT 29, ¶ 20, 232 P.3d 999. The district court is therefore limited to consideration of "the facts alleged in the pleading itself rather than factual determinations from prior proceedings." *Puttuck v. Gendron*, 2008 UT App 362, ¶ 11, 199 P.3d 971.

¶18 Here, the accountant's warning and letter were not "facts alleged in the pleading itself." *See id.* Accordingly, the district court erred by considering them for the purposes of the motion to dismiss. Instead, the district court should have treated the motion to dismiss as a motion for summary judgment and given the parties an opportunity to present pertinent material. *See* Utah R. Civ. P. 12(c). If a district court does not exclude material outside the pleadings and fails to convert a motion to dismiss to one for summary judgment, "it is reversible error unless the dismissal can be justified without considering the outside

documents." *State v. One Hundred Five Thousand Six Hundred Forty Six Dollars*, 2013 UT App 41, ¶ 7, 297 P.3d 647 (citation and internal quotation marks omitted).

¶19 The district court's error is rendered harmless, however, by our determination below that Husband failed to plead fraud with particularity. *See infra* ¶¶ 28, 36–37.[4] We therefore decline to reverse based on the district court's error because dismissal is justified without consideration of the outside documents.

### IV. Husband Failed to Plead Fraud with Particularity.

¶20 Husband contends that the district court erred by ruling that he failed to plead fraud with particularity. Husband's complaint stated four causes of action alleging fraud: that Wife misrepresented the value of a commercial plaza owned by the couple, that Wife fraudulently used marital assets to partially fund the purchase of a townhouse, that Wife failed to disclose accounts jointly held by her and one or more other defendants that contained marital assets, and that Wife conspired with the other defendants to "defraud [Husband] of marital assets and to convert those assets."

---

4. Additionally, if it had converted the motion to dismiss to one for summary judgment, the court could have properly considered Husband's February 2008 pleading in the divorce case and would likely have come to the conclusion that Husband's allegations in that pleading demonstrated constructive knowledge of Wife's alleged fraud. *See* Utah R. Civ. P. 61 ("[N]o error or defect in any ruling or order or in anything done or omitted by the court . . . is ground for granting a new trial or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

¶21 "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Utah R. Civ. P. 9(b). A claim of fraud requires the plaintiff to allege (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either knew to be false or made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was induced to act (9) to that party's injury and damage. *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35 (further noting, in the context of a motion for summary judgment, that conclusory allegations of the elements of fraud, unsupported by relevant surrounding facts, are insufficient).

A.   Valuation of Phoenix Plaza

¶22 Husband and Wife owned certain commercial property located in St. George, Utah, named Phoenix Plaza. In November 2007, Husband and Wife participated in mediation to divide their marital property. One of the topics at mediation was the disposition of Phoenix Plaza. Because Wife was managing Phoenix Plaza at that time, she had prepared an estimate of its value based, in part, upon information she had about the then-current tenants. In her estimate, Wife stated, "We did compute 5% vacancy rates to get the 7.5 million [valuation] @ 7% [capitalization rate]. Rents would have to increase by $277 per month (which they are/will) before closing."[5] Wife provided this

---

5. Husband asserts that this constituted a statement by Wife that the vacancy rates were in fact five percent or less and that such statement was a misrepresentation. However, elsewhere in his complaint, Husband admitted that, at the time of the mediation session, all of the space at Phoenix Plaza was occupied—a vacancy rate of zero percent. He did not allege that the holdover tenants were paying less in rent than they had under their leases.

(continued…)

estimate to Husband at some point prior to the mediation session.

¶23 During the mediation session, Wife represented that a banker was willing to refinance Phoenix Plaza for $3.5 million based on a valuation of $7.5 million. Husband then agreed to refinance the outstanding Phoenix Plaza mortgage for $3.5 million and to pay Wife roughly $1,784,419 in exchange for her marital share of the equity in Phoenix Plaza. This agreement was included in the Stipulation, which was itself incorporated into the decree of divorce entered by the district court.

¶24 In his complaint, Husband alleged that Wife had provided the banker with false information about the rent roll for Phoenix Plaza in order to obtain an inflated valuation of the property. Specifically, Husband claimed that Wife misrepresented the status of the leases for roughly a quarter of Phoenix Plaza by stating that the leases remained in force for a further seven to twenty-two months when in fact the leases had expired and the tenants were holding over from month to month. Husband asserted that the banker had relied on Wife's false lease information to provide the $3.5 million refinancing estimate. Husband claimed that he had relied on Wife's representation that the banker was willing to refinance Phoenix Plaza for $3.5 million. In short, Husband alleged that Wife misrepresented the nature of the tenants to the banker to get a refinancing estimate of $3.5 million and then misrepresented to Husband that a $3.5 million refinance was available from the banker.

¶25 The district court ruled that Husband had not stated the facts underlying Wife's alleged fraud with the particularity

---

(…continued)
Even assuming the doubtful proposition that Wife's assumptions for purposes of the estimate were representations of actual facts, it is not clear how using a higher-than-actual vacancy rate could result in an overvaluation.

required by Utah Rule of Civil Procedure 9(b). The court explained that "[t]he statements relating to the availability of refinance for [Phoenix Plaza] are not statements of presently existing facts as required to allege fraud." The court also noted that Husband "has not stated any facts (especially with particularity) of the specific dates, times, [and] statements by [Wife] that misled him in the negotiations."

¶26    On appeal, Husband asserts that he was "very specific in setting forth the representations made by [Wife] concerning presently existing material facts, i.e., the current status of the leases and rent rolls, which were false at the time they were made" to the banker. This argument does not directly challenge the court's actual ruling—that Wife's statements to Husband regarding the *availability of refinance* were not presently existing material facts. Because Husband fails to challenge the court's ruling on this point, the first two elements of a fraud claim are unsatisfied—i.e., "(1) that a representation was made (2) concerning a presently existing material fact . . . ." *See Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35 (citation and internal quotation marks omitted).

¶27    Moreover, Husband's complaint did not allege that Husband relied on Wife's misrepresentation of "the current status of the leases and rent rolls." Rather, the complaint stated that "[Wife] failed to provide [Husband with] a copy of the Rent Roll." The complaint alleged that Husband relied on Wife's statement that the banker had loans available.[6] If we accept

6. Husband notes that Wife provided him a loan application from the banker roughly a month after the Stipulation was signed. According to Husband, the loan application required "a certified rent roll prior to the Loan Closing showing occupancy of at least 31,000 square feet . . . . Such tenants shall be in occupancy, paying rents and not in default under leases satisfactory to Lender as of the date of funding." Husband's complaint admitted that all 35,000 square feet of Phoenix Plaza was leased at the time of the mediation. The complaint does not

(continued…)

Husband's new assertion on appeal that the "presently existing material fact" at issue was actually "the current status of the leases and rent rolls," we can see nothing in the complaint alleging that Husband "(7) did in fact rely upon [that fact] (8) and was thereby induced to act (9) to [his] injury and damage." *See Armed Forces Ins. Exch.*, 2003 UT 14, ¶ 16.

¶28   Because Husband does not challenge the district court's determination that the statement upon which he had claimed to rely did not constitute a presently existing material fact, we affirm the resulting ruling that Husband failed to plead this fraud in the inducement claim with the requisite particularity.

B.      The Garfield and Mesquite Properties

¶29   Before the marriage, Wife owned certain real property located on Sego Lily Drive in Salt Lake City, Utah. After the couple married, Wife sold that property and used the proceeds to provide the majority of the down payment on a rental property located on Garfield Avenue (the Garfield Property) in Salt Lake City. After nine years, and during the marriage, the Garfield Property was sold, netting Wife approximately $890,000. Wife then contributed that money toward the purchase of Phoenix Plaza. Husband also contributed roughly $2.3 million toward the Phoenix Plaza purchase, in the form of real property exchanges. Under the Stipulation, Wife was awarded a portion of the proceeds from Phoenix Plaza proportional to her $890,000 contribution.

¶30   In his complaint, Husband alleged that, without his knowledge, Wife had used marital funds to pay the mortgage on

---

(…continued)

assert that the holdover tenants were "in default under leases satisfactory to Lender." It does not appear that a rent roll consisting of both fixed-term leases and month-to-month holdover leases could not have satisfied these conditions so long as all of the tenants were paying their rent.

the Garfield Property at an accelerated rate. This increased the equity in the Garfield Property and hence the net proceeds from its sale. In turn, this increased Wife's proportional share of Phoenix Plaza. As a result, Husband asserted, he should be awarded a greater interest in Phoenix Plaza "than that described in the Stipulation."

¶31   The complaint also noted that during the marriage, Wife purchased real property in Mesquite, Nevada, for approximately $93,000 (the Mesquite Townhouse). Roughly $51,000 of the purchase price was paid via a real property exchange. The exchanged property was a condominium unit purchased by the couple during the marriage. Wife ostensibly paid the remaining $42,000 of the Mesquite Townhouse's purchase price out of an "early inheritance" from her parents. According to the complaint, Wife "has since denied receiving an early inheritance of this magnitude." Husband's complaint alleged that "the approximately $42,000 was obtained from marital assets unbeknownst to [Husband] and without his authorization."

¶32   Husband's second cause of action alleged that Wife fraudulently used marital assets to pay down "her financial obligations" and "falsely represented that monies contributed to [the Mesquite Townhouse] were from an early inheritance" when in fact the monies "came from marital assets." It is unclear whether the phrase "her financial obligations" in the second cause of action was intended to mean the balance of the purchase price for the Mesquite Townhouse or the mortgage payments for the Garfield Property (or both or neither).

¶33   The district court ruled that Husband had not alleged fraud with sufficient particularity, noting that the complaint failed to state "with particularity any facts regarding supposed use of marital assets to purchase the townhouse or the condominium." The district court also noted that the complaint stated "nothing about specifically when marital monies were used to purchase the properties or where the monies came from."

¶34 On appeal, Husband asserts that his complaint "specifically alleged that during the course of the parties' marriage that [Wife] used money in the parties' joint account, i.e., marital funds, to pay off the debt on her separate property" and that "[t]he time of such payments would have been after the purchase of the Garfield Property in 1995 and before its sale in June of 2004."

¶35 "[T]he mere recitation by a plaintiff of the elements of fraud in a complaint does not satisfy the particularity requirement." *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35; *see also Fidelity Nat'l Title Ins. Co. v. Worthington*, 2015 UT App 19, ¶¶ 10–11, 344 P.3d 156. Conclusory allegations, unsupported by a recitation of relevant surrounding facts, are insufficient to carry that burden. *Armed Forces Ins. Exch.*, 2003 UT 14, ¶ 16. The relevant surrounding facts must be set forth with sufficient particularity to show which facts the plaintiff believes support the allegations. *Id.*

¶36 Here, despite Husband's claim on appeal, his second cause of action did not specifically allege that Wife used money from the parties' joint account; rather, it stated in conclusory fashion only that Wife "committed fraud . . . by using marital assets to pay down her financial obligations."[7] Nor did the facts stated in the remainder of the complaint make such an allegation; the complaint averred only that the Garfield Property payments were "taken from marital assets" and that $42,000 of the Mesquite Townhouse purchase price was "obtained from marital assets." The complaint failed to identify any details of the supposed payments, rendering the assertion that they even occurred merely speculative. The complaint was also devoid of any explanation of how or when Husband became aware of the

---

7. It is true that the complaint only mentioned one joint checking account and stated that "[n]early all expenses related to the parties' properties were paid through the joint account." But nearly all is not actually all, and the term "marital assets" in this case clearly encompasses more than a single checking account.

alleged fraud. Rather, the complaint simply speculated that, because Wife apparently made the payments, Wife must have used marital assets. The mere fact that one spouse makes a payment does not support an inference that the spouse funded the payment using marital assets, much less that such funding would be improper. While the precise contours of the term "particularity" may be debatable, the claim that Wife may have made an unknown number of payments amounting to an unknown total using funds from an unknown source or sources at unknown times interspersed throughout a nine-year period is insufficiently detailed to satisfy the particularity requirement.

¶37    Husband has not shown that his complaint pleaded this alleged fraud with particularity; accordingly, we affirm the district court's dismissal of the second cause of action.

C.    Use of Marital Funds by All Defendants

¶38    Husband's third cause of action alleged that Wife "committed fraud by knowingly failing to disclose additional marital assets including the accounts separately held by her or jointly held by her and one or more of [the other defendants]." It also alleged that Wife "committed fraud by knowingly failing to disclose and concealing the fact that the alleged custodial accounts held in the names of her then minor children were actually marital property." The complaint did not associate any of the other defendants specifically with any of the accounts. In fact, the complaint did not identify any of the purported accounts. The district court ruled that "[t]here is absolute[ly] no specificity in these allegations [such as] where the accounts were held, when they were held, when marital assets were placed in them, whose names were on which accounts, etc."

¶39    On appeal, Husband refers to allegations in the complaint that Wife misused a joint credit card and withheld the credit card statements from him. He asserts that the complaint specifically alleged Wife's misuse of the credit card for non-business expenses, "including, the credit card account used . . . , when the charges were made, the amount of the charges, the

names of merchants, and the purpose of the charges."[8] He concludes, "Thus, a clear and specific description of the facts underlying these fraud claims, have been sufficiently alleged under Rule 9(b)."

¶40    However, the particularity, or lack thereof, with which Husband pleaded the credit card account allegations has no bearing on the third cause of action. That cause of action did not refer to any of the credit card account allegations. Instead, it asserted the nebulous existence of asset accounts, averred that Wife had failed to disclose them to Husband, and sought to impose a constructive trust on them. The complaint provided no identifying details about the asset accounts or, indeed, anything other than conclusory speculation that they even existed. On appeal, Husband does not argue that the asset account allegations were pleaded with particularity. Instead, he claims, inaccurately, that he pleaded misuse of a credit account with particularity.

¶41    Because the third cause of action concerns asset accounts and not credit accounts, Husband has failed to challenge the basis for the district court's determination that the third cause of action was not pleaded with the requisite particularity. When an appellant does not challenge the district court's basis for its

---

8. The complaint did not actually allege these details. For each year, the complaint stated only an approximate annual total and the amount, apparently rounded to the nearest fifty dollars, spent for each of several generalized categories during that year. For example, the complaint's entry for 2008 spending alleged that "slightly over $100,000" was charged to the credit card and, of that, Wife spent "approximately $9,000 on travel; $5,500 on hair, beauty and spas; nearly $13,000 for clothes; over $14,500 on bars, restaurants, liquor and entertainment; and charges of over $22,000 for the benefit of one or more of [the other defendants.]" No specific charges are identified. And in recounting three years' worth of transactions, the complaint provided names for only two merchants.

determination, we will not overturn that determination. *See Benns v. Career Serv. Review Office*, 2011 UT App 362, ¶ 2, 264 P.3d 563 (per curiam). We therefore affirm the district court's dismissal of that cause of action.

## V. Husband Did Not Adequately Plead a Claim for Breach of Fiduciary Duty.

¶42    Husband next contends that "the district court erred by dismissing [Husband's] breach of fiduciary duty claim." Both of Husband's first two fraud-based causes of action (the first relating to Phoenix Plaza and the second relating to the Garfield Property and the Mesquite Townhouse) also alleged that Wife breached a fiduciary duty owed to him. Without further analysis, Husband lists the citations of three cases in support of his assertion that "a fiduciary duty can exist between a husband and a wife." But none of those cases actually supports such a proposition. One of the three cases makes no mention of either the word "fiduciary" or "duty." *See Boyce v. Boyce*, 609 P.2d 928 (Utah 1980). The other two cases cited by Husband mention fiduciary duty only to describe allegations made by the respective parties. *See Despain v. Despain*, 682 P.2d 849, 852 (Utah 1984); *Glover v. Glover*, 242 P.2d 298, 300 (Utah 1952). Nevertheless, we assume without deciding that a fiduciary duty can arise within a marital relationship. *Cf.* 41 C.J.S. *Husband & Wife* § 3 (1991) ("The personal relationship between spouses is generally viewed as a . . . fiduciary relationship in which each spouse owes to the other a . . . duty to disclose pertinent assets and factors relating to those assets . . . .").[9]

¶43    Several principles guide the determination of whether a fiduciary relationship may be implied:

9. To determine whether a fiduciary relationship exists between two spouses, it may be appropriate to consider the "age, mental condition, education, business experience, state of health, and degree of dependence of the spouse in question." 41 C.J.S. *Husband & Wife* § 3 (1991).

> [T]o determine whether a fiduciary duty should be implied in law due to the factual situations surrounding the transaction and the relationship of the parties, we consider the following principles:
>
> A fiduciary relationship imparts a position of peculiar confidence placed by one individual in another. A fiduciary is a person with a duty to act primarily for the benefit of another. A fiduciary is in a position to have and exercise and does have and exercise influence over another. A fiduciary relationship implies a condition of superiority of one of the parties over the other. Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary.
>
> A confidential relationship may similarly arise whenever a continuous trust is reposed by one party in the skill and integrity of another.

*First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990) (citations and internal quotation marks omitted).

¶44   Here, the district court ruled that "the complaint does not allege sufficient facts [to show] that [Wife] had a fiduciary duty to [Husband]." The court noted that Wife's alleged provision of accounting services "would not be uncommon in a husband/wife relationship" and did not alone place Wife "'in a position to have and exercise and [to actually] have and exercise influence over another.'" (Alteration in original) (Quoting *First Sec. Bank*, 786 P.2d at 1333). The district court further explained that, because Wife "kept the books and provided accounting services for the assets in the marital estate of which she was a co-beneficiary," she "did not have 'a duty to act *primarily* for the benefit' of [Husband]." (Emphasis added) (Quoting *First Sec. Bank*, 786 P.2d at 1333).

¶45 On appeal, Husband points to the allegations in his complaint that, "[d]uring the course of the marriage, [Wife] served as [Husband's] accountant and maintained their financial records. [Wife] received an annual payment from [Husband] for her accounting services." But while these allegations may suggest that Wife was in a position to exercise influence over Husband, he did not allege that she actually did so. Nor did he allege that she actually exercised some financial superiority over him; rather, the complaint claimed that they acted as partners.[10] And Husband did not allege that he had reposed his trust in Wife's skill and integrity.

¶46 We conclude that Husband has not demonstrated that the district court erred in determining that the allegations in the complaint were insufficient to support a claim that a fiduciary relationship had actually arisen between Husband and Wife.[11] Accordingly, we affirm the district court's dismissal of the breach of fiduciary duty claims.

## VI. Husband Did Not Adequately Plead a Claim for Civil Conspiracy.

¶47 Husband contends that the district court erred by dismissing his civil conspiracy claim for failure to plead with particularity. Husband's complaint alleged that Wife "has conspired with [the other defendants] to defraud [Husband] of marital assets and to convert those assets." It also alleged that the other defendants "were aware and had knowledge that the funds they were receiving were marital assets or assets to be

10. And, as previously noted, the district court found that Husband "is a sophisticated businessman."

11. Moreover, because the breach of fiduciary duty claims were entwined with, and based on, fraud claims that were not pleaded with particularity, Husband cannot show that Wife breached any fiduciary duties by committing the alleged fraudulent acts.

shared with [Husband] pursuant to the Stipulation." Husband presumes that these are two distinct claims: first, civil conspiracy to commit fraud and, second, civil conspiracy to commit conversion.

¶48 "A claim for civil conspiracy must allege the following elements: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Fidelity Nat'l Title Ins. Co. v. Worthington*, 2015 UT App 19, ¶ 16, 344 P.3d 156 (citation and internal quotation marks omitted).

A.     Civil Conspiracy to Commit Fraud

¶49 "In all *averments* of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Utah R. Civ. P. 9(b) (emphasis added). Conclusory allegations, unsupported by relevant surrounding facts, are insufficient. *Worthington*, 2015 UT App 19, ¶ 10.

¶50 Husband argues, "To the extent that [Wife's] breach of fiduciary duties arises from fraud; [Husband] has pled such fraud with sufficient particularity, as set forth above." But we have determined that the district court correctly ruled that Wife did not owe a fiduciary duty to Husband and that the fraud claims relating to Phoenix Plaza and to the Garfield Property and the Mesquite Townhouse were not pleaded with sufficient particularity. *Supra* ¶¶ 28, 36–37. Moreover, Husband's civil conspiracy claim did not allege a breach of fiduciary duty.

¶51 In any event, we readily conclude that the civil-conspiracy-to-commit-fraud claim was not pleaded with particularity. While Husband's complaint stated that Wife conspired with the other defendants to defraud him, Husband offers no specificity to bolster that claim. We therefore agree with the district court that Husband failed to allege any "specific overt acts (including when, where, who, what)" in which the other defendants participated. Husband's complaint also asserts

that the other defendants knew that "the funds they were receiving were marital assets." But this fell short of alleging a meeting of the minds between those defendants and Wife on the object or course of action to be taken. *See Worthington*, 2015 UT App 19, ¶¶ 16–18. Moreover, the complaint was also devoid of any specificity concerning Husband's that the other defendants had such knowledge.

B.    Civil Conspiracy to Commit Conversion

¶52    Husband argues that his civil conspiracy claim was not dependent on fraud and therefore need not be pleaded with particularity. However, his claim was that Wife and the other defendants "conspired . . . to defraud [Husband] of marital assets and to convert those assets." However, as noted above, Husband has not sufficiently alleged that Wife fraudulently acquired marital assets that did not belong to her. Husband thus cannot prove that those assets were then converted. We are therefore not convinced that Husband's civil conspiracy claim had a life independent of the fraud claim.

¶53    We conclude that the district court did not err in dismissing Husband's civil conspiracy claim, because the civil conspiracy claim relied on an underlying fraud claim that was not pleaded with particularity.

VII. The Complaint Is an Independent Action.

¶54    Husband's seventh contention is that the "district court erred by ruling that [Husband's] independent action brought under Rule 60(b) of the Utah Rules of Civil Procedure was barred by res judicata." He asserts that "in order to have res judicata effect on an independent action brought under Rule 60(b), it is necessary that a similar motion to set aside under Rule 60(b) was previously filed in the underlying action and decided on the merits." However, as we explain above, this suit is an independent action untethered to any rule 60(b) claim. *See supra* ¶¶ 10–14. And we have resolved Husband's claims above

without considering the preclusive effect of res judicata. As a result, we need not consider this contention further.

### VIII. Res Judicata as to the Fraud Claims.

¶55    Husband contends that the district court erred by ruling that his fraud claims against Wife were barred based on res judicata. Because we have affirmed the district court's determination that the fraud claims were inadequately pleaded, we need not address Husband's challenge to the district court's alternative ruling that the fraud claims were also barred by res judicata.

### IX. Res Judicata as to Claims Against the Other Defendants.

¶56    Husband contends that the district court erred by ruling that his claims against the other defendants are barred by res judicata. He argues that res judicata does not bar his claims against defendants other than Wife for fraud, conversion, and civil conspiracy. We have affirmed the district court's determinations that those claims were inadequately pleaded. Consequently, we need not address the district court's alternative ruling based on res judicata or Husband's challenge to that ruling.

### X. Wife Is Not Contractually Entitled to an Award of Attorney Fees.

¶57    Wife cross-appeals. She first contends that the district court erred by denying her an award of attorney fees under the Stipulation. The Stipulation provided that "[t]he prevailing party to an action for breach of a term of this Agreement shall be entitled to his or her attorneys fees and costs." After the court granted both her motion for summary judgment and motion to dismiss, Wife filed a motion seeking $14,183.11 in attorney fees and costs.

¶58    The district court found that "the filing of [Husband's] action was not an action for breach of a term of [the Stipulation]

so the contract provision of the agreement for award of attorney fees is not applicable." The court did not explain the basis for this finding.

¶59   On appeal, Wife begins by asserting that Husband breached the Stipulation. However, this action was not brought on the basis of Husband's alleged breaches. Accordingly, whether Husband breached the Stipulation is immaterial to the issue before us on cross-appeal.

¶60   Wife next asserts that Husband's complaint "alleges, in essence, a breach of contract claim, although labeling and presenting such claims under the rubric of fraud." She points to Husband's third cause of action. There, Husband recited a portion of the Stipulation that provided, "Each party has made a full and fair disclosure to the other of his or her assets, financial condition and worth . . . ." Husband then alleged, "[Wife] committed fraud by knowingly failing to disclose additional marital assets . . . ." Wife also points to Husband's fourth cause of action, which was for conversion. There, Husband stated, "The Stipulation provided that net income from the properties were [sic] to be divided evenly between the parties." Husband then alleged, "[Wife] has converted or has stolen funds from the joint account beyond the 50% that [she] was entitled." Finally, Wife asserts that Husband used this action to record lis pendens on real property owned by the couple in a "not-so-veiled attempt by [Husband] to further frustrate [Wife's] attempts to enforce and collect amounts due [to] her under the terms of the Stipulation."

¶61   Husband responds that Wife has "failed to comply with the requirements of Rule 24 of the Utah Rules of Appellate Procedure." He states that Wife "failed to provide a statement of the issues for review, the standard of review for each issue with supporting authority, [or] a citation to the record where the issue was preserved." Yet Wife did all of these things on pages one and two of her brief. Husband next points out that Wife did not include a copy of the district court's "Ruling on Motion to Award Attorney Fees and Costs." This is true. However, this

ruling is in the record designated on appeal and Wife's opening brief provides adequate citation to that ruling within the record. Husband also argues that because the other defendants were not parties to the Stipulation, they have no standing to request an award of attorney fees pursuant to it. But the other defendants do not do so. In fact, the contractual-attorney-fee-award section of Wife's brief scrupulously uses her name rather than the collective term "defendants." Husband then mischaracterizes Wife's alternative argument (seeking an equitable award of attorney fees) as a concession that this action was not based on a breach of the Stipulation.

¶62    Finally, Husband asserts that his complaint was not "an action for breach of a term of [the Stipulation]," because he was "seeking to set aside or obtain relief from [it], based on [Wife's] fraud." We note that Husband's complaint did not explicitly allege a breach of the Stipulation and that Husband sought a declaration that the Stipulation was void rather than voidable. Although it appears that the motivation behind the litigation is Husband's attempt to evade the duties imposed upon him by the Stipulation, his complaint targeted the validity of the Stipulation rather than presenting "an action for breach of a term of this Agreement." Accordingly, Wife is not entitled to an award of attorney fees under the Stipulation's attorney-fee provision.

XI. Wife Is Not Entitled to a Statutory Attorney-Fee Award.

¶63    Wife contends that she is entitled to a statutory award of fees and costs under Utah Code section 78B-5-825.[12] That statute provides that "[i]n civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit *and* not

_____

12. Wife initially argues that "[a]ll of the Defendants in this action" are entitled to such an award. However, she concedes that because she "is the only party that actually paid any attorney fees, she is the only defendant that can make a claim under this statutory section."

brought or asserted in good faith." Utah Code Ann. § 78B-5-825 (LexisNexis 2012) (emphasis added).

¶64 The district court found that "this action was not frivolous or brought in bad faith. The action raised valid issues which were not wholly without basis in law or fact especially on the issues of the applicability of the statute of limitations and res judicata. Neither was the action filed in bad faith."

¶65 An action is meritless when it is "frivolous or of little weight or importance having no basis in law or fact." *Warner v. DMG Color, Inc.*, 2000 UT 102, ¶ 22, 20 P.3d 868 (citation and internal quotation marks omitted). Wife's only argument on this point is that the fraud claim was meritless because it lacked a basis "in fact or law since it had been raised in the [separate divorce action], rejected and not taken on appeal by [Husband]." Wife appears to be referring to the fraud-in-the-inducement claim. But this action consisted of more than just that single fraud claim. Furthermore, this action named parties who could not have been joined in the divorce action. We therefore conclude that Wife has not shown error in the district court's determination that this action was not meritless.[13]

¶66 We consider next whether the action was brought in bad faith. "A party acts in bad faith when he brings an action and either (1) lacks an honest belief in the propriety of the activities in question, (2) intends to take unconscionable advantage of others, or (3) intends to or has knowledge of the fact that his actions will hinder, delay, or defraud others." *Wardley Better Homes & Gardens v. Cannon*, 2002 UT 99, ¶ 29, 61 P.3d 1009. Wife

---

13. The district court did not use the word "meritless." Rather it noted that the action was not frivolous and that the issues were not wholly without basis in law and fact. Because meritlessness is defined as being frivolous or having no basis in law and fact, *Warner v. DMG Color, Inc.*, 2000 UT 102, ¶ 22, 20 P.3d 868, it appears that the district court effectively ruled that the action was not meritless.

argues that the district court's finding was conclusory and lacked any subsidiary findings on those three factors. Wife notes the lis pendens and several motions filed by Husband and asserts that they were attempts to "hinder and delay [Wife's] enforcement and collection actions." Without analyzing why these actions demonstrate bad faith, Wife asserts that the district court "should have found that [Husband] acted in bad faith when he filed this action," the lis pendens, and the motions. We conclude that these conclusory assertions are insufficient to show error in the district court's determination that this action was not brought in bad faith.

¶67　Wife has not demonstrated that this action was meritless or that it was brought in bad faith. Accordingly, she is not entitled to an award of attorney fees under Utah Code section 78B-5-825.

## XII. Wife is Not Entitled to an Award of Attorney Fees Incurred on Appeal.

¶68　Wife seeks an award of her attorney fees incurred on appeal. Generally, a party which received attorney fees below and then prevails on appeal is entitled to fees reasonably incurred on appeal. *Giles v. Mineral Resources Int'l, Inc.*, 2014 UT App 259, ¶ 25, 338 P.3d 825. We have determined that the district court correctly denied an award of attorney fees to Wife. Accordingly, Wife is not entitled to an award of attorney fees reasonably incurred on appeal.

## CONCLUSION

¶69　The district court correctly determined that this action was independent from the divorce action and that rule 60(b)'s "reasonable time" provision therefore did not supplant the normal statute of limitations. The district court erred by considering documents outside the pleadings during its consideration of the motion to dismiss, but that error was harmless. The district court correctly determined that Husband's

fraud claims were not pleaded with particularity and that his breach of fiduciary duty and civil conspiracy claims were inadequately pleaded. Given the resolution of these issues, we need not review the district court's res judicata rulings. Wife was not contractually or statutorily entitled to attorney fees.

¶70    Affirmed.

——————